## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WEBSTER BANK, NATIONAL ASSOCIATION, | ) FILED: APRIL 2, 2008 |
| | ) 08CV1890      PH |
| Plaintiff | ) JUDGE KENDALL |
| | ) MAGISTRATE JUDGE VALDEZ |
| v. | ) |
| | ) |
| LAWRENCE LUCAS | ) |
| | ) |
| Defendant. | ) |

### COMPLAINT

Plaintiff, Webster Bank, National Association, by and through its attorneys, hereby complains against Lawrence Lucas for breach of contract and in support states the following:

### JURISDICTION

1.      This Court has subject matter jurisdiction over this subject matter under 28 U.S.C. §1332 and 28 U.S.C. § 1348.  This is a civil action between citizens of different states.  The amount in controversy in this action exceeds $75,000.00, exclusive of costs and interest.

2.      Venue is properly before this Court pursuant to 28 U.S.C. §1391(a)(1) and (a)(3) because Defendant Lawrence Lucas ("Lucas") resides within the district and is subject to personal jurisdiction here.

### THE PARTIES

3.      Plaintiff, Webster Bank, National Association  ("Webster"), is a national banking association with its principal place of business located in Waterbury, Connecticut.

4.      Defendant Lucas is a resident of Lake County, Illinois.

### THE FACTS

5.    On November 13, 2006, Webster and Lucas entered into a loan agreement evidenced by a written promissory note. (11/13/06 promissory note "Note" attached hereto as Exhibit A).

6.    Under the terms of the Note, Webster agreed to loan Lucas the principal amount of $922,800.00 at a yearly interest rate of the "Prime Rate" plus 2.00%. Ex. A, Note, ¶ 2. The loan was for the purpose of construction on the property located at 4109 Northgate Drive, Spring Grove IL, 60081 and Webster funded the loan pursuant to the agreement.

7.    Pursuant to the Note, on January 1, 2007, Lucas was to begin making monthly payments of the interest only. These payments were to continue until Lucas had "paid all of the principal and interest and any other charges described below that [Lucas] may owe under [the] Note." Ex. A, Note, ¶ 3.

8.    The Note also contained a "Maturity Date" of December 1, 2007, on which Lucas agreed to pay in full any remaining amounts due under the Note. Ex. A, Note, ¶ 3.

9.    Lucas made the scheduled payments through November 2007. However, on December 1, 2007, Lucas failed to make the scheduled payment, and thereafter has not made a single payment to Webster.

10.    The Note provides that if Webster "has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, [Lucas] will pay a late charge," of "5.000 % of [the] overdue payment of principal and interest." Ex. A, Note, ¶ 6(A).

11.    The Note provides that if a payment is not made on the date it is due, Lucas will be in default. Ex. A, Note, ¶ 6(B).

12.    Therefore, Lucas is currently in default.

13.     On January 29, 2008, pursuant to the terms of the note, Webster sent Lucas a notice of default, and now deems the full amount of principal and interest due. Ex. A, Note, ¶ 6(c).

### COUNT ONE – Breach of Contract

14.     Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 13 above as if fully set forth herein.

15.     Webster offered to loan Lucas the sum of $922,800.00 on the terms described in the Note.

16.     Lucas accepted the terms of the Note.

17.     The consideration for the contract consisted of Webster's payment of the principal and Lucas's agreement to repay the loan with interest.

18.     The parties memorialized their agreement on November 13, 2006 by executing the Note, thus creating a valid and enforceable contract.

19.     By funding the loan, Webster fully performed.

20.     Lucas began performance by making monthly interest payments.

21.     On December 1, 2007, Lucas stopped making monthly payments, is now in default and thereby breached the contract.

22.     Pursuant to the terms of the Note, Webster deems the entire sum of principal and interest due and payable.

23.     The terms of the Note provided that Lucas agreed to pay any expenses Webster incurred in enforcing the provisions of the Note, including attorney's fees. Ex. A, Note, ¶ 6(E).

24.     As of the date of filing, the amount of principal, interest, and expenses due on the Note exceeded $787,643.40.

**WHEREFORE**, plaintiff Webster Bank respectfully requests that this Court enter judgment in Webster's favor and against Lucas on the Note in an amount to be proved at trial including interest at the default rate, attorney's fees, costs, expenses believed to be in excess of $787,643.40 and order any other relief the Court deems equitable and just under the circumstances.

Dated: April 2, 2008

Daniel Lynch (Ill. Bar No. 6202499)
Lynch & Stern LLP
150 S. Wacker Dr., Suite 2600
Chicago, IL  60606
(312) 346-8700 / (312) 896-5883 (fax)

Respectfully submitted,
Webster Bank, National Association,

 s// *Daniel Lynch* (filed electronically)
By: One of Its Attorneys

# Exhibit A – Note

## WEBSTER BANK EZ TWO™ - CONSTRUCTION LOAN NOTE

### (SHORT TERM DAILY VARIABLE RATE - BALLOON PAYMENT)

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

| | | |
|---|---|---|
| **November 13, 2006** | **Oakbrook** | **Illinois** |
| Date | City | State |

**4108 Northgate Drive, Spring Grove, IL 60081**
(Property Address)

**1. BORROWER'S PROMISE TO PAY**

    In return for a loan that I have received, I promise to pay U.S. $    **922,800.00**    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is **Webster Bank, National Association.** I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder". The loan will be disbursed through future advancements to pay for construction to be undertaken on the premises located at the Property Address, and shall include the terms and provision of the attached Construction Rider to Note and Security Instrument.

**2. INTEREST**

    **(A)** Interest will be charged on unpaid principal until the full amount of principal has been paid. The interest rate during the term of the loan will be variable and will be computed on a daily basis and calculated on the basis of a 365 day year, for the actual number of days elapsed from the date of each advance to and until maturity at an annual rate equal to the sum of the "Prime Rate" (as hereinafter defined) plus    **2.000**    percent.

    **(B)** As used herein, the "Prime Rate" shall be the highest prime rate as published in the Money Rates Table of the Wall Street Journal. The annual interest rate under this note will be computed each time there is a change in the Prime Rate so that the annual interest rate under this note will equal the Prime Rate plus    **2.000**    percent. If more than one prime rate is published in the said Money Rates Table, the Lender will use the highest of these rates. If the Wall Street Journal ceases publication or ceases to publish a Money Rates Table or if a prime rate is no longer included among the rates published therein, the Lender will substitute a comparable index. The selection of a comparable index shall be made in Lender's sole discretion. The "Prime Rate" is not necessarily the lowest loan rate offered by the Lender. The rate of interest hereunder shall be reviewed daily, and will change simultaneously with changes in the Prime Rate.

    **(C)** The interest rate required by this Section 2 is the rate I will pay, and changes shall be made as provided therein, both before and after any default described in Section 6(B) of this Note .

**3. PAYMENTS**

    **(A)   Time and Place of Payments**

    I will pay "interest only" before maturity by making payments every month, in accordance with billing from the Lender or Note Holder.

    I will make my monthly payments on the    **1 s t**    day of each month beginning on    **January 1, 2007** . I will make these payments every month until I have paid all the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    **December 1, 2007**    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

    I will make my monthly payments at Webster Plaza, 145 Bank Street, Waterbury, CT 06702, or at a different place if required by the Note Holder.

    **(B)   Amount of Monthly Payments**

    My monthly payment will be in the amount that is computed under the terms of this Note, until the Maturity Date when the entire outstanding balance of principal, and all accrued interest will be due and payable in full.

## 4. PREPAYMENTS

Unless otherwise limited by written agreement, I will have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment". When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge, unless I have agreed to pay such a charge or penalty in any other agreement, in which case such charge or penalty shall be due. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   **5.000**   % of my overdue payment of interest and principal then due. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES.

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. SECURED NOTE**

This Note is a secured instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property, or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)
**LAWRENCE LUCAS**      -(Borrower)

_____ (Seal)
-(Borrower)

_____ (Seal)
-(Borrower)

_____ (Seal)
-(Borrower)

*(Sign Original Only)*

**EZ TWO™** - Multistate - Short Term Daily Variable Rate - Balloon Payment - Construction Loan Note
Page 3                          4704188341                          YAKpb

## CONSTRUCTION RIDER TO NOTE AND
## SECURITY INSTRUMENT

**THIS RIDER** is an agreement to modify the terms of my loan to provide for a period of time during which future advances will be made to pay for the construction of improvements upon the Property.

LENDER - As used herein the term Lender shall mean

### WEBSTER BANK, NATIONAL ASSOCIATION

or any assignee, transferee or successor in interest thereto.

This Rider changes the terms of the promissory Note and Security Instrument (Mortgage, Deed of Trust or Security Deed) which I have signed which are dated     **November 13, 2006**     in regard to the property located at

**4108 Northgate Drive, Spring Grove, IL 60081**

("Property"). I agree that the covenants, terms and provisions set forth in this Rider will amend, supercede and replace any inconsistent terms, covenants or provisions in the promissory Note and Security Instrument, where the two are different. This loan contains provisions for changes in the interest rate and monthly payments due under the Note. The interest rate will change whenever the Prime Rate changes, as defined in the Note.

**A.    CONSTRUCTION LOAN - FUTURE ADVANCES.** THE ADDITION OF THIS RIDER TO THE NOTE AND MORTGAGE IS INTENDED AND AGREED TO MAKE THIS A CONSTRUCTION LOAN SECURED BY A CONSTRUCTION MORTGAGE WITHIN THE MEANING OF THE LAWS OF ILLINOIS (INCLUDING WITHOUT LIMITATION §9-313 OF THE ILLINOIS UNIFORM COMMERCIAL CODE). THE MORTGAGE SHALL SECURE FUTURE CONSTRUCTION LOAN ADVANCES FOR THE CONSTRUCTION OF IMPROVEMENTS ON THE PROPERTY, AS WELL AS ALL SUCH ADDITIONAL SUMS AND AMOUNTS AS ARE SET FORTH IN THE CONSTRUCTION LOAN AGREEMENT, NOTE AND LOAN DOCUMENTS. ALL SUMS ADVANCED HEREUNDER SHALL BE DEEMED TO HAVE BEEN MADE BY THE LENDER UNDER AN OBLIGATION TO DO SO, AND SHALL HAVE THE SAME PRIORITY AS THE ORIGINAL INDEBTEDNESS.

**B. BORROWER'S WAIVERS IN CASE OF DEFAULT .** IN THE EVENT OF A DEFAULT, BORROWER HEREBY WAIVES ALL RIGHTS OF RE-INSTATEMENT, REDEMPTION, APPRAISAEMENT, VALUATION, STAY AND EXTENSION TO THE FULLEST EXTENT THAT SUCH RIGHTS MAY BE WAIVED UNDER THE LAWS OF ILLINOIS, (INCLUDING WITHOUT LIMITATION THE ILLINOIS MORTGAGE FORECLOSURE ACT.

**C.  RECEIVER - MORTGAGEE IN POSSESSION.** IN THE EVENT OF A DEFAULT, IN ADDTION TO LENDER'S OTHER RIGHT AND REMEDIES, LENDER SHALL BE ENTITLED TO (A) THE APPOINTMENT OF A RECEIVER UNDER AUTHORITY OF THE COURT, WITH FULL LEGAL RIGHTS AND POWERS TO COMPLETE THE CONSTRUCTION OF IMPROVEMENTS, AND TO PRESERVE AND PROTECT THE PROPERTY; AND/OR (B) TO BE APPOINTED BY THE COURT AS "MORTGAGEE IN POSSESSION" WITH FULL LEGAL POWERS, RIGHTS AND PRIVELEGES PERMITTED UNDER LAW.

**1. PROJECT COMPLETION DATE**
The loan is to be disbursed in installments to finance construction, which I promise to complete on or before **December 1, 2007**     , referred to as the **"PROJECT COMPLETION DATE"**, in strict compliance with the project Plans and Specifications which have been provided to Lender.
If, the Lender determines that the construction of the project or completion of all of Borrower's obligations regarding the documentation thereof will not be completed by     **December 1, 2007**     , it shall be a sufficient basis for a default, and Lender shall have the right to stop making disbursements of money even before     **December 1, 2007** . In such circumstances, in addition to all of Lender's other rights and remedies, Lender shall have the right to accelerate the loan and make all sums outstanding due and payable at once, together with interest, fees, costs of collection and all other charges, including reasonable attorneys' fees. It is expressly agreed that "TIME IS OF THE ESSENCE" with respect to the full completion of construction and of all obligations regarding the documentation thereof.

## 2. WORK IN PLACE

The Lender has agreed to make the loan herein described to be paid in installments as the work is completed and to disburse funds only FOR WORK IN PLACE, based upon inspection.

The Lender is obligated to advance the full amount of the loan $        922,800.00        provided that I have fully performed and met all of the conditions and requirements which I have promised to undertake in the Construction Loan Agreement, Promissory Note, Security Agreement, Commitment Letter and Loan Documents; and provided that the loan is not in default.

## 3. INSPECTION FOR STATUS OF COMPLETION ONLY

The Lender shall inspect the project in order to ascertain the status of completion and the progress of the construction of improvements. The sole purpose for Lender's inspection is to determine the approximate amount and value of the work which has been done, so that Lender may disburse funds for such work in place. Such inspections shall not require a review by Lender of the quality of the construction. **As Borrower, I will not rely on the Lender's inspection for any purpose whatsoever.** Rather, I will be solely responsible for the progress and quality of construction, and the discovery of all delays, defects, faults, imperfections and deviations from the Plans and Specifications shall be my sole responsibility as Borrower.

## 4. DELAYS IN THE COMPLETION OF CONSTRUCTION OR PERFORMANCE

If the construction of all planned improvements or repairs, and the performance of all of my obligations regarding the documentation thereof is not completed by        December 1, 2007        , then in addition to all of its other rights under the loan documents, the Lender, at its option, has the right to do any or all of the following:

   A.  **DEFAULT-** declare a default and exercise all of its rights reserved in the loan documents to act in case of default; or

   B.  **CONSTRUCTION PERIOD EXTENSION** - agree that Lender will extend the time for construction through modification of the loan documents, (Construction Period Extension) provided that Borrower co-operates fully in the execution thereof and pays the costs, fees and expenses associated with such extension, including Project Delay Surcharges, extension fees, document preparation fees, courier fees, recording fees, title insurance costs, and all other costs incurred or required to complete the extension; or

   C.  **NO OBLIGATION TO EXTEND** - Lender shall have no obligation to permit more time for construction or the full performance of Borrower's obligations. The time selected by Borrower for the completion of the project is Borrower's responsibility, and failure to fully complete all construction and meet all required conditions within the time chosen by Borrower can be a default. Any extension of time for performance that is agreed to by Lender shall be at Lender's sole discretion.

## 5. NOTICE TO LENDER OF CLAIMS AND LIENS.

Any person wishing to claim the benefit of any Mechanics Lien is advised by the recording hereof that the address of the Lender for receipt of any **Contractor's Sworn Statement Of Account, Claim For Mechanics Lien, Notice to Owner**, or other mechanics lien claim under Illinois law, or for any other notice, claim or lien is shown below. Any such notice should be delivered to such address by certified mail return receipt requested .

**Attn: Robert M. Imperato, Vice President**
**Webster Bank, N.A.**
**Construction Lending Center**
**609 West Johnson Avenue**
**Cheshire, CT  06410**

As Borrower, I promise to notify the Lender, immediately upon my receipt of any such Contractor's Sworn Statement Of Account, Claim For Mechanics Lien, Notice to Owner, or any other notice, claim or lien relating in any way to the Property and to provide copies to Lender of all documents, demands or claims received by me regarding the same.

**6. EXTINGUISHMENT AND SURVIVAL.**

    Unless otherwise extended in writing, on    **December 1, 2007**   , the provisions of this Rider, except this paragraph, shall self-extinguish and be of no further force and effect, provided however, that any causes of action, claims or rights of the Lender which accrue before said date shall continue unaffected and undiminished by such extinguishment.

BY SIGNING BELOW, on this day Borrower accepts and agrees to the terms and covenants contained in this Rider.

Date: _____

Borrower:   **LAWRENCE LUCAS**

Borrower: _____      Borrower: _____

Borrower: _____      Borrower: _____

The undersigned witnessed the signature of the Borrower(s) at the time this Rider was signed .

Settlement Agent _____      Date   11/13/06

**EZ TWO™ - ILLINOIS** Construction Rider To Note And Security Instrument
© Interstate Closing Systems, All Rights Reserved    Page 3       4704188341        XLL.pb